IN THE UNITED STATES DISTRICT COURT FOR THE
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | |
| ) | NO. 3:14-cr-00182-1 |
| v. ) | |
| ) | JUDGE RICHARDSON |
| ) | |
| TIMOTHY W. THOMAS ) | |

## MEMORANDUM OPINION

Pending before the Court is Defendant's Renewed Motion for Compassionate Release (Doc. No. 358, "Compassionate-Release Motion"). The Government filed a response, noting that it does not oppose Defendant's Compassionate-Release Motion (Doc. No. 362, "Response").

Via the Compassionate-Release Motion, Defendant seeks a reduction of his 66-month sentence and immediate release from the custody of the Bureau of Prisons ("BOP"), pursuant to 18 U.S.C. § 3582(c)(1)(A)(i). Defendant claims that his specific health profile, specifically his terminal illness, satisfies the requirement of "extraordinary and compelling reasons" necessary for this Court to grant "compassionate release"[1] under Section 3582(c)(1)(A)(i).

For the reasons discussed herein, Defendant's Compassionate-Release Motion will be GRANTED.

BACKGROUND

---

[1] Motions like this Compassionate-Release Motion are generally known as ones for "compassionate release," and Defendant's requested relief appropriately can be referred to and conceived of as "compassionate release" or "sentence modification" (or "sentence reduction"). *See United States v. Maumau*, No. 2:08-CR-00758-TC-11, 2020 WL 806121, at n.2 (D. Utah Feb. 18, 2020) ("In this order, the court uses the phrase 'compassionate release' and 'sentence modification' interchangeably, which is consistent with how other courts have used the terms."); *United States v. McDonald*, No. 94-CR-20256-1, 2020 WL 3166741, at *1 (W.D. Tenn. June 8, 2020).

On October 29, 2014, Defendant was charged with six counts of wire fraud in violation of 18 U.S.C. § 1343; one count of mail fraud in violation of 18 U.S.C. § 1341; four counts of money laundering in violation of 18 U.S.C. § 1956(a)(1)(B)(i); and four counts of criminal contempt in violation of 18 U.S.C. § 401(3). (Doc. Nos. 1, 1-1). On July 12, 2018, Defendant pled guilty to one count of mail fraud and one count of criminal contempt. (Doc. No. 218). Defendant was thereafter sentenced by visiting United States District Judge David M. Lawson to 66-months' imprisonment, followed by a three-year term of supervised release, and restitution in the amount of $2,549,872.88. (Doc. No. 216). Defendant has been serving his sentence at Butner Federal Medical Center in North Carolina. According to BOP, Defendant's projected release date is November 21, 2023. *See Federal Inmate Locator*, Bureau of Prisons, https://www.bop.gov/inmateloc/ (last accessed Oct. 27, 2021). This case was assigned to the undersigned on May 5, 2020.

Defendant has made numerous filing that the Court has construed as collectively comprising a total of three different prior compassionate-release motions, the last of which was denied by this Court's Order (Doc. No. 342) filed April 9, 2021.[2] The Court has denied each of these either for failure to exhaust administrative remedies or for failure to show extraordinary and compelling reasons as required for compassionate release. In denying Defendant's first motion (initiated by Defendant's filing at Doc. No. 287), the Court noted that "if Defendant's illness was to take an unfortunate turn for the worse, becoming truly terminal, Defendant may refile a motion for compassionate release." (Doc. No. 307 at 17). As indicated, Defendant thereafter filed what effectively amounted to two additional compassionate release motions that have been denied.

---

[2] This Order described in some detail the various filings that collectively represented a total of three prior compassionate release motions. (Doc. No. 342 at 1-2).

Then, on October 13, 2021, Defendant filed his latest such motion, the pending Compassionate-Release Motion.

## LEGAL STANDARDS FOR "COMPASSIONATE RELEASE"

Prior to 2018, only the Director of the Bureau of Prisons could move for compassionate release. The First Step Act amended 18 U.S.C. § 3582(c) to allow prisoners to move for compassionate release on their own behalf. *See* First Step Act of 2018, § 603, Pub. L. No. 115-391, 132 Stat. 5239. Now, under 18 U.S.C. § 3582(c)(1)(A), as modified by the Section 603(b)(1) First Step Act,[3] a district court *may* under certain circumstances grant a defendant's motion for compassionate release (hereinafter, "defendant-filed motion"). *See United States v. Jones*, 980 F.3d 1098, 1106 (6th Cir. 2020) ("Congress's use of 'may' in § 3582(c)(1)(A) dictates that the compassionate release decision is discretionary, not mandatory."). In order to grant such a defendant-filed motion, however, a court must find that the so-called "exhaustion requirements" have been satisfied—*i.e.*, "[either] the defendant has fully exhausted all administrative rights to appeal a failure of [BOP] to bring a motion [for compassionate release] on the defendant's behalf or [there has been a] lapse of 30 days since the receipt of such a request [for BOP to file such a motion] by the warden of the defendant's facility, whichever is earlier." *See also United States v. Alam*, 960 F.3d 831, 833 (6th Cir. 2020) (explaining that a district court may not disregard the

---

[3] That paragraph of Section 603 provides:

> (b) INCREASING THE USE AND TRANSPARENCY OF COMPASSIONATE RELEASE.—Section 3582 of title 18, United States Code, is amended—

(1) in subsection (c)(1)(A), in the matter preceding clause (i), by inserting after ''Bureau of Prisons,'' the following: ''or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier . . .''

exhaustion requirements of Section 3582(c)(1)(A)).

Once it properly can act on a defendant-filed motion brought under 18 U.S.C. § 3582(c)(1)(A), the district court next determines whether, in its discretion, to grant compassionate release to a defendant. In its opinion in *Jones*, the Sixth Circuit discussed the steps of the compassionate release analysis:

> The three-step § 3582(c)(1)(A) test is as follows. At step one, a court must "find[ ]" whether "extraordinary and compelling reasons warrant" a sentence reduction. 18 U.S.C. § 3582(c)(1)(A)(i). At step two, a court must "find[ ]" whether "such a reduction is consistent with applicable policy statements issued by the Sentencing Commission." *Id*. § 3582(c)(1)(A) (emphasis added). The Commission's policy statement on compassionate release resides in U.S.S.G. § 1B1.13. *See* U.S.S.G. § 1B1.13 (U.S. Sent'g Comm'n 2018). Thus, if § 1B1.13 is still "applicable," courts must "follow the Commission's instructions in [§ 1B1.13] to determine the prisoner's eligibility for a sentence modification and the extent of the reduction authorized." *Dillon* [*v. United States*], 560 U.S. [817,] 827 [(2010)]. At step three, "§ 3582(c)[ (1)(A) ] instructs a court to consider any applicable § 3553(a) factors and determine whether, in its discretion, the reduction authorized by [steps one and two] is warranted in whole or in part under the particular circumstances of the case." *Id*.

*Jones*, 980 F.3d at 1107-08. The court then went on to resolve the following question with respect to defendant-filed motions (as opposed to compassionate-release motions filed by BOP) in particular: "given the First Step Act's procedural reforms to compassionate release, is § 1B1.13 still an applicable—'that is, "relevant" or "appropriate,"' [*United States v. Ruffin*, 978 F.3d 1000, 1007–08 (6th Cir. 2020)]—policy statement for the purposes of the second § 3582(c)(1)(A) inquiry?" *Id*. at 1109. The court noted that this is a question that has "sharply divided the courts," *id*. (citation omitted), as many district courts, including this Court, previously considered the Section 1B1.13 policy statements applicable when determining whether compassionate release was warranted. The court then chose a side, holding that "the passage of the First Step Act rendered § 1B1.13 'inapplicable' to cases where an imprisoned person files a motion for compassionate

release." *Id*. (citing *United States v. Brooker*, 976 F.3d 228, 234 (2d Cir. 2020)).[4] Therefore, "[u]ntil the Sentencing Commission updates § 1B1.13 to reflect the First Step Act, district courts have full discretion in the interim to determine whether an 'extraordinary and compelling' reason justifies compassionate release when an imprisoned person files a § 3582(c)(1)(A) motion." *Id*.

In other words, because § 1B1.13 is inapplicable to defendant-filed motions, a district court adjudicating such a motion is not bound by anything § 1B1.13 has to say about—including any limitations or requirements § 1B1.13 would impose upon—the finding of extraordinary and compelling reasons. But this rule is not the only consequence of the Sixth Circuit's decision in *Jones*. Another is that the district court, in adjudicating a defendant-filed motion, may disregard the requirement of § 1B1.13(2) that the court find the defendant not pose a danger (to any other person or to the community) in order to grant compassionate release.

If, in adjudicating a defendant-filed motion, a district court determines that "extraordinary and compelling reasons" for compassionate release exist, the court then determines whether compassionate release is warranted in light of the Section 3553(a) sentencing factors. *See Jones*, 980 F.3d at 1112.[5] The sentencing factors set forth in Section 3553(a) include:

> (1) the nature and circumstances of the offense and the history and characteristics of the defendant;
>
> (2) the need for the sentence imposed—

---

[4] Prior to *Jones*, this Court treated § 1B1.13 as applicable to all motions for compassionate release, whether filed by BOP or by a defendant. The Court does not necessarily perceive that such treatment resulted in a resolution of any defendant-filed motions that was any different than the result the Court would have reached by treating § 1B1.13 as inapplicable to defendant-filed motions. But the Court does note that at least the analytical framework it used prior to *Jones* was different than the analytical framework it will use in the aftermath of *Jones*.

[5] As suggested above, under *Jones*, the analysis of a defendant-filed motion differs from the analysis of a BOP-filed motion in that (among other ways) the latter kind of motion—to which § 1B1.13 remains applicable—requires an intermediate determination of whether the defendant-movant poses a danger to other persons or the community. *See* U.S.S.G. §1B1.13(2).

> (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
> (B) to afford adequate deterrence to criminal conduct;
> (C) to protect the public from further crimes of the defendant; and
> (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;
>
> (3) the kinds of sentences available;
>
> (4) the kinds of sentence and the sentencing range established for—
> (A) the applicable category of offense committed by the applicable category of defendant as set forth in the . . .
> i) [United States Sentencing Guidelines, ("U.S.S.G.")]—
> ii) [in effect at the time of sentencing]
>
> (5) any pertinent policy statement—
> A) issued by the Sentencing Commission pursuant to section 994(a)(2) of title 28, United States Code; and
> B) [and in effect at the time of sentencing]
>
> (6) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and
>
> (7) the need to provide restitution to any victims of the offense.

18 U.S.C. § 3553(a).

## ANALYSIS

### I. Exhaustion of Administrative Remedies

Here, Defendant has exhausted his administrative remedies, by submitting a request for a reduction in sentence to the BOP. (Doc. No. 358 at 42). The BOP's assistant director/general counsel denied Defendant's request for compassionate release on September 27, 2021 on the stated grounds that although Defendant met the eligibility criteria for a reduction in sentence, "given the nature and circumstances of [Defendant's] offense, his release at this time would minimize the severity of his offense." (*Id*. at 42-43). After this denial, Defendant then properly filed his Compassionate-Release Motion in this Court.

## II. Extraordinary and Compelling Reasons

In addressing the merits of Defendant's Compassionate-Release Motion, the Court first must determine whether "extraordinary and compelling reasons" exist for Defendant's compassionate release. Defendant bears the burden to show that extraordinary and compelling reasons exist warranting his release. *United States v. Johnson*, No. 3:16-CR-00242, 2020 WL 4753846, at *4 (M.D. Tenn. Aug. 17, 2020), *appeal dismissed*, No. 20-6026, 2020 WL 7213445 (6th Cir. Nov. 12, 2020) (citations omitted).

Here, Defendant argues that he is entitled to compassionate release "based on his extraordinary and compelling reasons [which] are multiple cancers, [gastrointestinal] stomach tumor[,] and many other conditions". (Doc. No. 358 at 1). In support of his Compassionate-Release Motion, Defendant asserts the following:

- A doctor put him on a chemotherapy medication that had already failed once before. (*Id*. at 1-2).

- There was a situation where Defendant bled profusely from his rectum and ended up in the Duke University Medical Center's ("DUMC") emergency room for three days. (*Id*. at 2).

- While at DUMC, a doctor revealed to Defendant that his gastrointestinal tumor grew to 10.1 centimeters, and his cancer spread to his liver and lungs, meaning that Defendant now has gastrointestinal cancer, liver cancer, and lung cancer. (*Id*.) Each cancer is in stage four. (*Id*. at 3).

- The DUMC doctor ordered radiation therapy to try to control the bleeding. (*Id*.). Defendant received twenty-five days of such treatment, but his rectum recently started to bleed again. (*Id*.).

- Defendant's liver has five tumors, and his lungs have three tumors. (*Id*.).

- Defendant has a life expectancy of eighteen months or less. (*Id*.).

- Defendant currently has two blood transfusions each week. (*Id*. at 5).

- "In addition to all the cancer issues[, Defendant] has asthma, dyslexia[, seizures,] rectal bleeding, ADAD [sic] and many more." (*Id*. at 7).

- Defendant is wheelchair-bound and lost thirty pounds rather quickly. (*Id*. at 9).

- Defendant is unlikely to reoffend. (*Id*. at 18).[6]

- Defendant has no criminal history prior to his current criminal case. (*Id*. at 20).[7]

The Court credits Defendant's assertions regarding his medical situation, because they are supported by his medical records filed in this case, letters from Defendant's doctors, and his prior criminal history score (as discussed in footnote 7). (*See* Doc. No. 358 at 23-40).

The Government agrees that Defendant has established extraordinary and compelling reasons for early release. The Government specifically notes that

> [t]urning to the merits, it seems clear that Thomas has established extraordinary and compelling reasons, since he is suffering from a terminal illness with a clear and fairly imminent end-of-life trajectory. See U.S.S.G. § 1B1.13 cmt. app. n.1(A)(i). The application notes to § 1B1.13 specifically list "metastatic solid-tumor cancer" as an example of a qualifying medical condition. And, as the Director of BOP recognized, Thomas's condition also qualifies as a "[t]erminal medical condition" within the meaning of section 3(a) of BOP Program Statement 5050.50. (See Att. A., Memorandum.) Although neither of these sources are binding on the Court, it stands to reason that, as an exercise of its broad discretion, the Court may

---

[6] The Court agrees with Defendant's assertion (even though it is made essentially in an wholly conclusory manner) that there is a low chance for recidivism his case, as discussed more thoroughly in Section III below regarding the applicability of the Section 3553(a) factors.

[7] Defendant's Presentence Investigation Report (PSR) indicates that Defendant actually had one prior criminal history point. (Doc. No. 220 at 16). But Defendant's assertion is accurate insofar as he, like a defendant with zero criminal history points, was in criminal history category one by virtue of having only a single criminal history point. The Court notes that, consistent with the Court's usual practice, Defendant's PSR was filed under seal, and it shall remain under seal except insofar as its contents were revealed in the first sentence in this footnote

> treat a terminal illness with an imminent end-of-life trajectory as an extraordinary
> and compelling reason within the meaning of the statute.

(Doc. No. 362 at 5-6). The Court agrees that Defendant's changed circumstances now reflect extraordinary and compelling reasons for Defendant's compassionate release. Defendant is terminally ill and has been advised by doctors that he does not have much longer to live. Indeed, this is the just the kind of situation that 18 U.S.C. § 3582(c) seeks to redress.

### III. Section 3553(a) Factors

Despite having made the required showing of extraordinary and compelling reasons justifying release, Defendant nevertheless is entitled to compassionate release only if such release is warranted considering the above-listed factors set forth in 18 U.S.C. § 3553(a). The Court will discuss each in turn, aware that some factors overlap to a large extent with other factors, and at times cross-referencing its discussion of one factor when discussing another factor.

*The nature and circumstances of the offense* counsel in favor of release, albeit only slightly. The charged offenses comprised: six counts of wire fraud in violation of 18 U.S.C. § 1343; one count of mail fraud in violation of 18 U.S.C. § 1341; four counts of money laundering in violation of 18 U.S.C. § 1956(a)(1)(B)(i); and four counts of criminal contempt in violation of 18 U.S.C. § 401(3). (Doc. Nos. 1, 1-1). The offenses of conviction, however, comprised only one count of mail fraud and one count of criminal contempt. (Doc. No. 218). These crimes—especially given the manner in which they were committed—are serious indeed and call for serious punishment. On the other hand, they are not violent; neither of his offenses of conviction (nor, for that matter, any of the offenses that were charged but dismissed) is a violent offense. Moreover, although Defendant's offense conduct by no means consisted of a one-off incident as opposed to recurring conduct, the crimes of conviction are not themselves of the type generally associated with a particularly high risk of recidivism.

*The history and characteristics of the Defendant* also favor release. Defendant has had no other conviction besides the instant offenses of conviction, and that was for conduct that occurred between 2007 and 2010. To be clear, in the past that has not given the Court a great deal of comfort, given the nature of the offense conduct in this case. But it is helpful to Defendant, especially when combined with the reality that with his extreme medical issues and short expected life span, he is unlikely to have either the wherewithal or the inclination to repeat the criminal conduct underlying his convictions. Accordingly, it is highly unlikely that Defendant will reoffend.

*The need for the sentence imposed to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense* counsels neither in favor of nor against granting compassionate release. The Sixth Circuit has explained that "the need to provide just punishment, the need to reflect the seriousness of the offense, and the need to promote respect for the law permit the court to consider the amount of time served in determining whether a sentence modification is appropriate." *United States v. Kincaid*, 802 F. App'x 187, 188–89 (6th Cir. 2020). Compassionate release at this time would effectively cut a 66-month sentence to approximately 31 months. It appears from BOP's projected release date that Defendant would be on track to get full credit for good-time served, which would reduce his actual time to serve to 56 months. The upshot is that if released at this time, Defendant would have served slightly more than half the time he was slated to have served.

As understandably concluded by BOP in declining to move the Court itself for Defendant's compassionate release, Defendant's release at this time could be viewed as under-reflecting the seriousness of the offense. It likewise could be viewed to impair promotion of respect for the law and provision of adequate punishment. On the other hand, all of these factors should be viewed in light of Defendant's particular situation. The Court believes that this shortened sentence is

sufficient to meet these particular sentencing objectives especially considering Defendant's terminal illness and low chance of recidivism. There is room for disagreement on this point, and the Court does not begrudge BOP for its view, but the Court is confident in the soundness of its view on these (subjective) factors.

*The need to protect the public from further crimes of the defendant* and *the need to afford adequate deterrence to criminal conduct* both cut in favor of compassionate release. Defendant is unlikely to engage in such behavior again considering his current health status and the fact that his criminal conduct took place over ten years ago. As suggested above, and as the Government correctly notes "[g]iven [Defendant's] now-diminished condition, [ ] it seems extremely unlikely that he could be a danger to the public, even if doubts about his rehabilitation remain." (Doc. No. 362 at 6). As for specific deterrence, Defendant at this juncture has little need for deterrence, given that his sentence already has provided substantial (if not maximal deterrence) and (even more to the point) that his medical condition likely leaves him disinclined to engage now in criminal conduct from which he needs to deterred. As for general deterrence, a sentence reduction under these circumstances would not undermine the deterrent effect of the sentence upon a hypothetical member of the public familiar with Defendant's case, who would realize that service of the original sentence awaited Defendant had not he become terminally ill.

*The need to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner* cuts strongly in favor of compassionate release. The focus in this case plainly is on the need for medical care. Defendant is terminally ill, has three different types of cancer, and receives blood transfusions every two weeks. Defendant's need for medical care is great. (*See* Doc. No. 358 at 23-40). And this factor is certainly broad enough to encompass the need for hospice and other kinds of end-of-life emotional and

spiritual (as well as medical) care, and suffice it to say that delivery of such care surely would be delivered more humanely and satisfactorily outside of BOP custody than inside BOP custody (to the extent it could be delivered in BOP custody at all).

*The guideline range under the United States Sentencing Guidelines* ultimately militates slightly against release. Defendant's original sentence was within the applicable guidelines range as proscribed by the United States Sentencing Commission (which was 63 to 78 months). As it happens, Defendant was sentenced three months above the bottom of that range, and he has about 25 months left on that sentence (as reduced for credit for good time served). If released at this time, Defendant would have served approximately 22 months less than he would have served on a bottom-of-the guidelines sentence if served in full (minus credit for good-time served). As the Government notes "[a]lthough a decision to release [Defendant] more than two years early is certainly significant, this is not a case in which [Defendant] still has a decade or more remaining on his sentence, or one in which he has served only a year or less." (Doc. No. 362 at 7).

*The need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduc*t cuts slightly in favor of compassionate release. Here, although it is true that there is a risk of sentencing disparity with this reduction, Defendant has served almost half of his sentence (a substantially higher percentage, in the Court's experience, than most prisoners who file compassionate-release motions), and more than half if one factors in expected credit for good time served. And to the extent that there is a disparity as reflected by the modified sentence being substantially below the bottom of the guideline range, that disparity is not unwarranted but rather is warranted because Defendant is critically and terminally ill.

*The need to provide restitution* is neutral. Defendant has a substantial restitution obligation, and likely will not be able to pay it in full. Early release, with its corresponding provision of the

possibility of the defendant earning compensation through employment, can enhance the likelihood that a defendant will be able to pay more in restitution that he otherwise would have. However, with Defendant's quickly declining health profile and short expected life span, it seems unlikely that he will be able to work for long or even at all. It seems that he will be unable to pay much restitution whether he remains in prison or is released.

On balance, the Court finds that the Section 3553(a) factors support early release for Defendant. The Court is mindful that compassionate release is an extraordinary remedy. *See, e.g., United States v. Rizzo*, No. CR 16-20732, 2020 WL 2092648, at *3 (E.D. Mich. May 1, 2020). That is why the Court's analysis here was fulsome even though the Government did not oppose compassionate release in this case. Compassionate release is not ordered lightly or justified easily. So when it is ordered, it should be very clear why the Court is granting a particular defendant a form of relief that, as is a matter of public record, has been very often denied to others nationwide (for reasons this Court does not dispute). The Court believes that its recounting and analysis of the material facts provide that clarity.

CONCLUSION

Given that Defendant has met his burden to demonstrate extraordinary and compelling reasons for his release, as discussed herein, the Court will grant Defendant's Compassionate-Release Motion. (Doc. No. 358). Defendant's sentence will be reduced to time served, plus up to 14 days in the discretion of BOP to quarantine Defendant (for COVID-19 reasons) prior to release. The terms and conditions of supervised release to which Defendant was originally sentenced will remain in place, with the added condition, as discussed above, that he will be required to self-

quarantine upon arrival at his residence[8] if he did not complete a BOP-instituted period of quarantine immediately prior to release from BOP custody.

An appropriate Order will be entered, and an Amended Judgment in a Criminal Case also will be entered.

*Eli Richardson*
ELI RICHARDSON
UNITED STATES DISTRICT JUDGE

---

[8] In its Response, the Government notes that "based on prior filings and discussions with BOP, [it] understands that [Defendant] intends to live with his son in Portland, Tennessee." (Doc. No. 362 at 7). The Court's Order granting compassionate release will be stayed for up to 14 days for the verification of Defendant's post-release residence, to make travel arrangements, and to ensure that it is safe for Defendant to travel; the stay specifically contemplates that BOP may choose to quarantine Defendant for up to 14 days prior to his release.